David Allegrucci (#12611)
*Allegrucci Law Office, PLLC*
307 North Miller Road
Buckeye, AZ 85326
PH (623)412-2330
FAX(623)878-9807
Attorney for the Debtor(s)-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>HAROLD KLINGER,<br>and<br>PENNY Y. KLINGER,<br><br>Debtor(s)-in-Possession. | Case No.: 2-10-bk-17779-RJH<br><br>In Proceedings Under Chapter 11<br><br>**DISCLOSURE STATEMENT** |

Dated: September 21, 2010

TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | II |
| II. | DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | II |
| III. | DISCLAIMER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | IV |
| IV. | EVENTS LEADING TO BANKRUPTCY. . . . . . . . . . . . . . . . . . . . | V |
| V. | OPERATIONAL CHANGES/EVENTS IN CHAPTER 11. . . . . . . . | VII |
| VI. | SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . . . . . . | VII |
| VII. | RETENTION OF LIEN RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . | X |
| VIII. | FINANCIAL PROJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . | XI |
| IX. | CHAPTER 7 LIQUIDATION ANALYSIS. . . . . . . . . . . . . . . . . . . . | XIII |
| X. | DISPUTED CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | XIV |
| XI. | ACCOUNTING BASIS OF THIS DISCLOSURE STATEMENT. . . . . . | XIV |

XII. DISCHARGE. . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .. . . . . . XIV
XIII. EXECUTORY CONTRACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . XV
XIV. TAX CONSEQUENCES . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . XV
XV. IMPLEMENTATION AND CONSUMMATION OF PLAN. . . . . . . . . . XV
XVI. AVOIDABLE TRANSFERS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . XVII
XVII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . XVII
XIII. REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . XVIII
IX. VOTING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . XVIII
XX. NO ADMISSION BY THE DEBTOR(S)-IN-POSSESSION. . . . . . . . . XX
XXI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . XX

## I. INTRODUCTION

On June 8, 2010, Harold and Penny Klinger filed the underlying bankruptcy petition. This Disclosure Statement is filed pursuant to 11 U.S.C. § 1125 and is intended to provide the holders of claims and interests with adequate information about this proceeding so as to enable creditors to make an informed judgment as to their acceptance or rejection of the proposed Plan of Reorganization.

## II. DEFINITIONS

As utilized in the Disclosure Statement and Plan of Reorganization which accompanies this Disclosure Statement, the following definitions apply to the following terms:

1. "Adequate information" means information that would enable a hypothetical reasonable investor typical of holders of claims or interest of the Debtors' estate to make an informed judgment about the Debtors' Plan of Reorganization.

2. "Bankruptcy Code" means the Bankruptcy Code as set forth in Title 11 of the United States Code.

3. “Bankruptcy Court” means the United States Bankruptcy Court for the District of Arizona, Phoenix Division.

4. “Confirmation of the Plan” shall mean the entry of an order by the Court confirming the Plan, as provided in the United States Code, Title 11, § 1129, and the expiration of any appeal period applicable with no appeal having been filed.

5. “Consummation of the Plan” means the accomplishment of all things required or provided for under the terms of the Plan.

6. “Court” means the United States Bankruptcy Court for the District of Arizona, Phoenix Division, presiding over this bankruptcy proceeding.

7. “Creditors” means all persons holding allowed claims for secured and unsecured obligations, liabilities, demands or claims of any nature whatsoever against the Debtors arising at any time prior to the confirmation of a plan of reorganization in this proceeding and administrative creditors.

8. “Disclosure Statement” means the Disclosure Statement filed in this case, approved after notice and a hearing, by the Court as being in conformity with § 1125 of the Bankruptcy Code.

10. “Debtor(s)-in-Possession” means collectively Harold and Penny Klinger in this disclosure statement.

11. “Effective Date” means the latter of (1) the first business day following eleven judicial days after entry of the Order of the Court confirming the Plan or (2) thirty-one judicial days subsequent to the entry of a final order of the Court of competent jurisdiction vacating any Order staying the efficacy of the Order of Confirmation, provided however, that in any event, all appeals shall have been resolved prior to there being any effective date.

12. “Petition” means the original Chapter 11 Petition filed by the Debtor-in-Possession on June 8, 2010.

13. “Plan” means the Plan of Reorganization accompanying this Disclosure Statement as it may be amended, modified, and or supplemented pursuant to which the Debtor(s)-in-Possession propose payment in whole or in part of creditors’ claims.

14. “Plan Distribution Date” means the date upon which distributions to be made under the Plan will be effected. This date will be thirty (30) days following the effective date of the Plan of Reorganization as defined above.

15. All other terms not specifically defined by this Disclosure Statement shall have the meaning as designated in § 101 of the Bankruptcy code or, if not contained therein, their ordinary meaning.

## III. DISCLAIMER

Any representation concerning the Debtor(s)-in-Possession’s Plan other than as set forth herein are unauthorized. This Disclosure Statement is designed to provide information the Debtor(s)-in-Possession deem material, important, and necessary for their creditors to arrive at an informed decision in exercising their right to accept or reject the Plan. **YOU SHOULD THEREFORE NOT RELY ON ANY OTHER INFORMATION, REPRESENTATIONS, OR INDUCEMENTS IN ASSESSING THE MERITS OF THE DEBTOR(S)-IN-POSSESSION’S PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT**.

The Debtor(s)-in-Possession expressly do not warrant nor do they represent that there are no inaccuracies in the following Disclosure Statement although the information provided is accurate to the best of their knowledge, information, and belief. Creditors should also be aware that the Court has not undertaken any individual determination to verify the accuracy of the information contained in this Disclosure Statement. Finally, the attorney for the Debtor(s)-in-Possession has not

made any independent evaluation as to the accuracy of the information contained herein other than to ascertain that the information contained herein is generally consistent with information provided by the Debtor(s)-in-Possession. Notwithstanding the foregoing, the Debtor(s)-in-Possession believe that the information contained herein is correct and accurate and complies with the requirements of the Bankruptcy Code.

## IV. EVENTS LEADING TO FILING BANKRUPTCY

Harold Klinger had been selling used cars for twenty-seven years. During the last twelve years of selling used cars, Mr. Klinger owned the business selling the used vehicles. Ms. Klinger was also active in their used automobile sales business for its last nine operating years. Through experience and their work ethic the Klingers were successful in the sale of used automobiles.

Approximately three years ago several macroeconomic factors combined to make the Klingers' automobile sales business unfeasible. First, the implementation of laws in this state to discourage illegal immigrants from purchasing items such as motor vehicles caused sales to decline. Then the decline in the Arizona economy, due to the drop in construction related spending, caused the Klingers' auto sales to further weaken.

The U.S. Government's "cash for clunkers" program, and auto makers' 0% interest loan offers for new cars, further reduced used car sales. In addition, used car sellers such as the Klingers had to search harder, and pay more, to acquire used cars for their sales inventory which further eroded their profit margins on each car they were able to sell. Finally, the lenders that the Klingers had been using to fund the purchase of their inventory ceased doing business in the state of Arizona.

The foregoing combination of factors made it impossible for the Klingers to continue in operation selling used vehicles and they closed their business of twelve

years in May, 2009.

When the Klingers purchased their present residence during June, 2004, their gross income averaged between $30,000 and $40,000 per month. As explained above, after purchasing their current home, their monthly income began a gradual but steady decline until their business closed May, 2009. Upon the closure of their business, the Klingers were unable to meet all of their financial obligations including their mortgage payments.

The Klingers have a "Pay Option ARM" loan as that term is defined in that certain "Consent Judgment" dated March 13, 2009, case no. CV2009-006468, entered in the Maricopa County Superior Court, pg. 8, lns. 11-13 (copy attached hereto). In addition, the Klingers' "Pay Option ARM" is a qualifying Mortgage as that term is defined in the attached "Consent Judgment", pg 14, ¶ 4.2(b)(i). Pursuant to the foregoing, the Klingers are beneficiaries of the attached "Consent Order" entitled to the relief contained therein at ¶ 4.3(b) *et seq.* pp17-18.

Despite being beneficiaries of the attached "Consent Order", *Bank of America* the obligor under said order, refused any relief to the Klingers on the first deed of trust secured on their homestead. In fact, the Klingers made monthly telephone calls to *Bank of America* requesting a modification of the loan secured by a first deed of trust on their homestead. These telephone calls began May, 2009 and continued through June, 2010 after this bankruptcy proceeding had begun. Instead of offering state court ordered relief to the Klingers, *Bank of America* initiated a foreclosure process on the Klingers' homestead. It was this foreclosure sale that necessitated this bankruptcy proceeding.

## V. OPERATIONAL CHANGES/EVENTS IN CHAPTER 11

During January, 2010 Mr. Klinger took a commission based, auto sales position, with the *Mercedes Benz* dealership for *Phoenix Motor Company* selling used automobiles. With Mr. Klinger's experience in selling automobiles he started off very well in this position and his commissions have continued to grow. Mr. Klinger expects to gross between $100,000 and $120,000 per year from this sales position. Mr. Klinger's monthly sales commissions are on track to meet the foregoing income projection. Ms. Klinger handles the media advertising for the entire used car inventory of *Phoenix Motor Company* in an effort to support Mr. Klinger's sales efforts.

In addition to the foregoing, the Klingers intend to sell consignment used vehicles through a wholly owned limited liability company to further increase their annual income. Ms. Klinger also has a state real estate license. She will enter that field when she believes that she can earn more income for their family than from her efforts to support Mr. Klinger's sales efforts. The Klingers believe that with their current earning potential, receiving the relief due them from the attached "Consent Order," and the debt reduction sought through this bankruptcy proceeding, they can meet their obligations under the proposed plan of reorganization.

## VI. SUMMARY OF THE PLAN OF REORGANIZATION

1. Unimpaired Administrative Claims (Class I)

I(A). U.S. Trustee Quarterly Fees.

This class includes all pre-confirmation quarterly fees due the United States Trustee. The aforementioned fees shall be timely paid by the Effective Date.

The debtor(s)-in-possession shall ensure that all quarterly fees due the United States Trustee and imposed by 28 U.S.C.§1930(a)(6) will be paid in a timely fashion through the date this case is dismissed, converted, or officially closed. The debtor(s) as

reorganized, shall timely complete and file quarterly reports in a form acceptable to the United States Trustee with the Court and provide copies thereof to the United States Trustee until entry of a final decree closing this proceeding.

2. Unimpaired Secured Claims (Class II)

| | |
|---|---|
| Creditor: | *Maricopa County Treasurer* |
| Nature of debt: | Statutory first lien position |
| Collateral: | Homestead |
| Amount due: | $5,580.79 |
| Treatment: | Paid in full at the statutory rate of interest of 16% in 36 equal monthly payments beginning on the Plan Distribution Date. |

3. Impaired Secured Claims (Class III)

| | |
|---|---|
| Creditor: | *Bank of America* |
| Nature of debt: | First deed of trust holder |
| Collateral: | Homestead |
| Amount due: | $1,688,484.00 |
| Treatment: | Paid pursuant to the attached "Consent Order." More specifically: |

Attached "Consent Order":

| Page | Paragraph | Treatment |
|---|---|---|
| 17 | 4.3(b)(ii)(B)<br>4.3(b)(ii)(C) | ten-year interest only period on the loan. Current loan interest rate floor is 3.125%. The actual interest rate floor, with the 7% cap, will be the rate used for this ten year period. |
| 18 | 4.3(b)(ii)(D) | reduction of the loan principal to 95% of the Klingers' home valuation. This relief would reduce the principal balance due B of A to $921,500.00. |

The foregoing modification of the loan with *Bank of America* results in a fluctuating monthly payment currently in the amount of $2,416.76. This sum, and other similar monthly payments, have been send to *Bank of America* since this bankruptcy case was filed.

The valuation of the Klingers' homestead is based upon a BPO performed by Ms. Klinger for houses similar to their home selling in their area of residence.

| | |
|---|---|
| Creditor: | *Chase Home Mortgage* |
| Nature of debt: | Second deed of trust holder |
| Collateral: | Homestead |
| Amount due: | $249,942.48 |
| Treatment: | Second deed of trust to be removed pursuant to an adversary action filed with the bankruptcy court. Resulting claim to be treated and paid as a general unsecured claim pursuant to Class IV below. |

| | |
|---|---|
| Creditor: | GMAC |
| Nature of Debt: | Purchase money security interest |
| Collateral: | *Cadillac Escalade* |
| Amount due: | $12,615.21 |
| Treatment: | Creditor to paid the current fair market of its vehicle, $10,000 at the contract rate of 4.9%, in equal monthly installments of $299.96 for 36 months beginning July 1, 2010. |

The valuation of the *Cadillac Escalade* was made by Mr. Klinger, with his experience in selling used cars, based upon the current condition of the vehicle.

4. <u>Impaired Unsecured Claims (Class IV)</u>

Class IV will consist of all other claims not specifically set forth above. Class IV claims will be treated and paid *pro rata*, as general unsecured creditors. Class IV will receive *pro rata* of their share of the total sum of $25,000.00. The aforesaid sum shall be paid by the Klingers, in full, within forty-eight (48) months of the Plan Distribution Date.

The Klingers estimate that the foregoing payment regime will result in an approximately two and one-half percent (2.5%) payback to general unsecured creditors with allowed claims on file in this case. Although this distribution may appear small,

the resources of the Klingers are not unlimited. The Klingers are proposing to repay their creditors based upon income a married couple can reasonably be expected to earn during the reorganization period.

Any claim, or portion of any claim, not specifically paid as set forth herein shall be discharged. The actual *pro rata* share of distribution for this class will be based upon the allowed proofs of claim filed in this proceeding.

5. Equity Interests of the Debtor(s)-in-Possession (Class V)

The Debtor(s)-in-Possession will retain their equity interests in all property owned by them, upon completion of all payments to classes Three (III) and Four (IV), as set forth above. The equity interests of the Debtor(s)-in-Possession cannot be retained unless one class of impaired creditors accepts the proposed Plan of Reorganization. 11 U.S.C. § 1129(a)(10). The equity interests of the Debtor(s)-in-Possession also cannot be retained over the objection of a senior class of impaired creditors unless their "new value contribution" exceeds that of any competing purchase offer for their equity interest or from a competing reorganization plan. *In re 203 North La Salle Street Partnership*, 119 S.Ct. 1411, 1422 (1999)

The right of Class Three (III) and Six (VI) claimants, to bid higher for the Debtor(s)-in-Possession's equity interest than the amount they propose to pay to said claimants, as well as file an alternate plan of reorganization, is expressly recognized by the proposed plan of reorganization.

## VII. RETENTION OF LIEN RIGHTS

Subject to the reorganized Debtor(s)-in-Possession's right to substitute collateral and the sale of collateral, classes two (II), and three (III), will retain their security interests in their collateral to the extent of each such creditor's allowed claim.

## VIII. FINANCIAL PROJECTIONS

The funding for this plan of reorganization will come from Mr. Klinger's commission income and the sale of consignment vehicles from their LLC. Ms. Klinger's income, through future real estate sales, may also contribute to the family income. Based upon Mr. Klinger's experience in auto sales he believes that the following income projections are obtainable:

2010:

| | |
|---|---|
| Commission income: | $100,000.00 |
| Consignment sales: | $ 5,000.00 |

2011:

| | |
|---|---|
| Commission income: | $120,000.00 |
| Consignment sales: | $ 10,000.00 |

2012:

| | |
|---|---|
| Commission income: | $120,000.00 |
| Consignment sales: | $ 20,000.00 |

The foregoing income projections are enough to meet the Klingers' debt repayment obligations under their proposed plan of reorganization.

### a. <u>The Klingers' Dispute The Constitutionality Of The Statutory Requirement That Their Postpetition Income Is Property Of This Bankruptcy Estate And The Mandatory Requirement To Pay It To Creditors.</u>

11 U.S.C. §1115(a)(2) provides:

> In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—
> …
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C. §1129(a)(15)(B) further provides:

> In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
> …
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

The Klingers' legal counsel believes that the aforementioned statutes conflict with the following rationale from the U.S. Supreme Court as to when bankruptcy requirements for plans of reorganization become unconstitutional for conflicting with the Thirteenth Amendment to the U.S. Constitution.

> … the argument overlooks Congress' primary concern about a debtor's being forced into bankruptcy under Chapter 13; that such a debtor, whose future wages are not exempt from the bankruptcy estate, § 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition. See H.R.Rep. No. 95-595 at 120. Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.
> *In re Radloff,* 111 S.Ct. 2197, 2202 (U.S. 1991)

When the aforementioned statutes became law on October 17, 2005, they required Chapter 11 bankruptcy debtors to submit their future earnings to payment of their debts. It is this exact statutory requirement that the U.S. Supreme Court previously found would render Chapter 11 of the U.S. Bankruptcy Code in violation of the Thirteenth Amendment of the U.S. Constitution.

If any party-in-interest, that has a statutory right to object to the Klingers' proposed plan of reorganization, objects to this constitutional analysis of the Klingers,

then the Klingers will file an adversary complaint pursuant to FRBP 7001(7) and (9) seeking a formal judicial determination of this constitutional issue and request that the Court certify the issue to the U.S. Attorney General pursuant to 28 U.S.C. 2403(a).

b. Risk Factors.

The Klingers' current income is from the same source that Mr. Klinger has obtained an above average income for twenty-three (23) years. The main risk to the funding of the proposed plan of reorganization is that Mr. Klinger loses his present employment position or that there is another macroeconomic hit to the sale of used automobiles in the state of Arizona. Since these risks are largely beyond the control of the Klingers, they believe that they have the economic feasibility to fund their proposed plan of reorganization.

## IX. CHAPTER 7 LIQIDATION ANALYSIS

Pursuant to the provisions of the Bankruptcy Code providing for Court approval of a Plan of Reorganization, debtors are required to pay creditors at least as much as each would have received in a Chapter 7 liquidation case.

The Debtor(s)-in-Possession have submitted their Plan of Reorganization in an attempt to comply with this requirement. Such a requirement is imposed to effectuate the dual purpose of Congress to allow debtors experiencing financial difficulty, to reorganize themselves and to provide larger distributions to creditors than such creditors would otherwise receive if liquidation under Chapter 7 were the only alternative for struggling debtors.

The Klingers' bankruptcy schedules do not reveal any nonexempt property that would be liquidated for the benefit of creditors were they to file a chapter 7 bankruptcy proceeding. The proposed plan of reorganization therefore provides unsecured

creditors with more than what they would have received had they filed a chapter 7 bankruptcy proceeding.

## X. <u>DISPUTED CLAIMS</u>

The Debtor(s)-in-Possession reserve the right to verify and object to any proof of claim filed in this proceeding. Payment to disputed claims shall be made pursuant to a court approved stipulation between the Debtor(s)-in-Possession and the disputed creditor(s) or upon order of the Court.

As of the date of this Disclosure Statement, the Debtor(s)-in-Possession are continuing to dispute the unmodified secured claim of *Bank of America* set forth in Schedule "D" of this proceeding. The Klingers' dispute that the scheduled amount and contract terms of the claim of *Bank of America.* The Klingers will assert that the terms of the attached "Consent Order" are the terms of *Bank of America's* secured claim against the Klingers.

## XI. <u>ACCOUNTING BASIS OF THIS DISCLOSURE STATEMENT</u>

The figures compiled in this Disclosure Statement have been assembled by the Debtor(s)-in-Possession from sources believed to be reliable. The accounting method utilized is a cash basis, calendar year-end method. See Section III for applicable disclaimers.

## XII. <u>DISCHARGE</u>

Pursuant to § 1141(D)(1) of the Bankruptcy Code, upon confirmation of the Plan, the Debtor(s)-in-Possession will be discharged of all debts listed in the schedules to the extent payment is not specifically provided for under the Plan.

## XIII. EXECUTORY CONTRACTS

All leases to be assumed have been assumed through separate motion and court approval. Any lease not specifically assumed by motion and court order is rejected.

## XIV. TAX CONSEQUENCES

Neither the debtors, their lawyer, or accountant can make any statements with regard to the tax consequences of the Plan on any of the creditors. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences.

## XV. IMPLEMENTATION AND CONSUMMATION OF PLAN

The terms of the Plan subsequent to confirmation shall bind the Debtor(s)-in-Possession, any entity acquiring property under the Plan, and any creditor or claimant, whether or not such creditor or claimant has accepted the Plan. Upon confirmation all property of the estate shall vest in the Debtor(s)-in-Possession and shall be free from attachment, levy, garnishment, or execution by creditors bound by the Plan.

Subsequent to confirmation of the Plan of Reorganization, the Debtor(s)-in-Possession will continue to engage in activities as presently conducted or in such form or manner as they may deem advisable. The Plan does not provide for the liquidation of all or substantially all of the property of the estate. Notwithstanding the foregoing, however, the Debtor(s)-in-Possession shall be free to operate their business and financial affairs in the ordinary course and may, without any further Order of the Court, convey, sell, assign, purchase, or lease any property of or for the benefit of the estate.

It shall be the obligation of each creditor participating under this Plan to keep the Debtor(s)-in-Possession advised of its current mailing address. In the event any payments tendered to the creditors are mailed, postage prepaid, addressed (1) to the address specified in the Debtor(s)-in-Possession schedules and statement, (2) to the address specified in any proof of claim filed by a creditor or claimant herein or (3) to the address provided by any such creditor or claimant on the master mailing list for purposes of notice in this proceeding, and if subsequently the Post Office returns such distribution due to lack or insufficiency of address or forwarding address, the debtor(s)-in-possession shall retain such distribution for a period of six (6) months. Thereafter, the distribution shall revert to the Debtor(s)-in-Possession without further order of the Court free and clear of any claim of the named distributee. The Debtor(s)-in-Possession shall thereafter not be required to mail subsequent distributions to any creditor for whom distribution has been returned by the Post Office. The Debtor(s)-in-Possession reserve the right to modify the Plan in accordance with § 1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided the Plan still complies with §1122 and §1123 of the Bankruptcy Code.

Any holder of a claim or interest that has previously accepted or rejected a confirmed Plan shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

The language of the Plan of Reorganization can change from the time of confirmation through submission of a final decree closing this estate.

All pre-confirmation quarterly fees due the United States Trustee will be timely paid by the effective date as an administrative claim. The Debtor(s)-in-Possession, as reorganized shall ensure that all quarterly fees due the Unites States Trustee and imposed by 28 U.S.C.§1930(a)(6) will be paid in a timely fashion through the date that

this case is dismissed, converted, or officially closed. The Debtor(s)-in-Possession, as reorganized, shall timely complete and file quarterly reports in a form acceptable to the United States Trustee with the Court and provide copies thereof to the United States Trustee.

## XVI. AVOIDABLE TRANSFERS

The Debtor(s)-in-Possession have reviewed their transfers for the period of ninety (90) days and one (1) year prior to the filing of their bankruptcy proceeding. During those periods they made no extraordinary payments to insiders. Within 90 days of filing bankruptcy they were in arrears to most creditors trade or otherwise. No extraordinary payments or transfers were made to trade or other creditors during that period. No known person or entity that would qualify as an insider received payment from the Debtor(s)-in-Possession within one (1) year of filing his Chapter 11 bankruptcy petition.

As a result, the debtors are unaware of any pre-petition transfers that are avoidable.

## XVII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objection to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allocability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purposes of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court will retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation, or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the

debtor(s)-in-possession shall not be bound by estoppel, the principles of *res judicata* or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

## XVIII. REPRESENTATION

No representations concerning the Debtor(s)-in-Possession are authorized by them other than as set forth in this Disclosure Statement. Any representation or inducement made to secure your acceptance which is other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtor(s)-in-Possession, who, in turn, will deliver such information to the Bankruptcy Court for such action as may be determined appropriate.

## XIX. VOTING

The only claimants whose acceptance of the plan are sought, are those whose claims or interests are "impaired" by the Plan, that is, those whose claims or interests are altered by the Plan or who will not receive under the Plan the allowed amount of their claims in cash. Holders of claims and interests which are not so "impaired" are determined to have accepted the Plan. Further, acceptance is not solicited from those claimants who would receive nothing under the Plan, since they are deemed to have rejected it.

If the Plan is rejected by one or more impaired classes of claims or interests, the Plan, or a modification thereof, may still be confirmed by the Court at the request of the Debtor(s)-in-Possession, if the Court determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class or classes of claims or interests impaired by the Plan.

If you are in one of the classes of creditors whose interests are affected by the Plan, it is important that you vote. If you fail to do so, your rights may be jeopardized.

To vote to accept or reject the Plan, creditors in any of the impaired classes should indicate their acceptance or rejection on a ballot which will be mailed to them. A class of claims will have accepted the Plan if it is accepted by creditors holding at least two-thirds (2/3) in amount and more than one-half (½) of the allowed claims of such class voting on the Plan.

EXECUTED BALLOTS MUST BE MAILED PRIOR TO 5:00 P.M., PHOENIX TIME, ____________________, 2010. BALLOTS SHOULD BE MAILED TO DAVID ALLEGRUCCI, ALLEGRUCCI LAW OFFICE, PLLC, 307 NORTH MILLER ROAD, BUCKEYE, ARIZONA 85326.

BECAUSE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED. ANY BALLOTS RECEIVED AFTER THIS DATE MAY NOT BE INCLUDED IN ANY CALCULATION TO DETERMINE WHETHER THE DEBTOR(S)'-IN-POSSESSION CREDITORS HAVE VOTED TO ACCEPT OR REJECT THE PLAN.

THIS IS A SOLICITATION BY THE PROPONENT ONLY AND IS <u>NOT</u> A SOLICITATION BY THE PROPONENT'S ATTORNEY OR ACCOUNTANTS, AND THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE PROPONENTS AND NOT OF THE PROPONENTS' ATTORNEY OR ACCOUNTANTS, EXCEPT AS OTHERWISE INDICATED. THE RECORDS SUBSEQUENT TO THE FILING OF THE PETITION FOR REORGANIZATION HAVE BEEN KEPT BY THE DEBTOR(S)-IN-POSSESSION AND MONTHLY FINANCIAL REPORTS HAVE BEEN SUBMITTED BY THE DEBTOR(S)-IN-POSSESSION FROM TIME TO TIME SINCE THE FILING OF THE PETITION. WHILE EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THE ACCURACY OF THE MONTHLY REPORTS, THEIR ACCURACY CANNOT BE GUARANTEED.

## XX. NO ADMISSION BY THE DEBTOR(S)-IN-POSSESSION

Nothing contained in this Plan shall constitute an admission of fact or law by the Debtor(s)-in-Possession and shall not be admissible in any proceeding for purposes of proving the validity or the invalidity of any claims or defenses which may in any way affect or benefit the Debtor(s)-in-Possession. The Debtor(s)-in-Possession may withdraw the Plan at any time prior to confirmation and upon doing so, nothing contained therein shall be deemed to preclude the litigation of any issue nor shall the Debtor(s)-in-Possession be collaterally estopped from asserting any right or claim that may be in the Debtor(s)-in-Possession's best interests.

## XXI. CONCLUSION

It is respectfully submitted that the Debtor(s)-in-Possession have given every thought to complex problems confronting them and you. With the assistance of counsel, they have devised and formulated this Plan with the hope that the equity of the Plan will be considered by the creditors. It is sincerely hoped that all creditors will join in the consent to the Plan so that they, as well as the Debtor(s)-in-Possession, will receive the maximum benefit possible under the present circumstances.

The foregoing proposed Disclosure Statement is respectfully submitted this 21st day of September, 2010.

/s/ Harold Klinger
Debtor-in-Possession

/s/ Penny Y. Klinger
Debtor-in-Possession

/s/ David Allegrucci
Attorney for the Debtor(s)-in-Possession